**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-CV-03115-KMT

JANE DOE, an individual

Plaintiff,

v.

UBER TECHNOLOGIES, INC., a Delaware corporation, UBER USA, LLC, a Delaware limited liability company; and RASIER, LLC, a Delaware; limited liability company,

Defendants.

_____

### **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
_____

Plaintiff responds to Defendants' Rule 12(b)(6) Motion to Dismiss [Doc. #19] ("Motion to Dismiss") as follows:

### **INTRODUCTION**

Plaintiff filed this case under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., to compel Uber to arbitrate claims arising from her use of its services. Uber requires any consumer who downloads its "App" and uses its services to agree to Uber's Terms and Conditions. Uber's Terms and Conditions state that any claim arising out of the consumer's use of its services will be resolved by arbitration administered by the American Arbitration Association ("AAA").

On November 1, 2015, one of Uber's employee drivers sexually assaulted Plaintiff while transporting her and a friend within the City and County of Denver.[1] Prior

---

[1] A jury found Uber's driver guilty of sexual assault in *People v. Galeano-Bedon,* Case No. 2015-CR-6350, filed in the District Court for the City and County of Denver.

to the sexual assault, Plaintiff had downloaded and used Uber's App and services, meaning that she and Uber agreed to resolve any claim arising out of her use of Uber's services by arbitration. Plaintiff demanded arbitration of her claims against Uber in October 2016; however, AAA informed her that it would not administer *any* consumer arbitration involving Uber because of its noncompliance with AAA rules.

Plaintiff is entitled to an order compelling Uber to proceed with arbitration of her claims arising from her use of Uber's services. Because Uber represents to consumers throughout the United States that claims will be resolved by arbitration administered by AAA, Plaintiff also has sued Uber for relief under the California Consumer Legal Remedies Act and the Colorado Consumer Protection Act.

## **PROCEDURE FOR DISPUTING AN AGREEMENT TO ARBITRATE**

"In order to further the use of arbitration as a method of expediting the disposition of commercial disputes and as a means of eliminating the expense and delay of extended court proceedings preliminary to arbitration, Congress provided in 9 U.S.C. § 4 an abbreviated procedure for obtaining specific enforcement of arbitration agreements." *Nat'l R.R. Passenger Corp. v. Missouri P.R. Co.,* 501 F.2d 423, 426 (8th Cir. 1974). *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 29 (1983) ("The Arbitration Act calls for a summary and speedy disposition of motion or petitions to enforce arbitration clauses.").

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to

> comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . <u>If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.</u>

9 U.S.C. § 4 (emphasis added).

"An order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 650 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25. "When the parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement." *Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279, 1283 (10th Cir. 1997).

### UBER'S MOTION TO DISMISS UNDER FED.R.CIV.P. 12(b)(6) IS IMPROPER

Relying on *Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 764, 776 (3rd Cir. 2013), Uber argues that a motion to dismiss under Rule 12(b)(6) is a proper means to dispute Plaintiff's request for an order compelling it to arbitrate under 9 U.S.C. § 4. Plaintiff disagrees. In *Guidotti,* the court held that a defendant may respond to a complaint by moving to compel arbitration if the complaint on its face shows that the claims are subject to an enforceable arbitration clause. *Guidotti,* 716 F.3d at 776. Such a motion is considered under a Rule 12(b)(6) standard. *Id.*

Nothing in *Guidotti* supports Uber's argument that a Rule 12(b)(6) motion—with the attendant delay it causes—is a proper means of responding to a complaint seeking to compel arbitration pursuant to the FAA. As the Tenth Circuit's decision in *Avedon* and the plain text of 9 U.S.C. § 4 show, the proper response to a complaint seeking to compel arbitration is to admit the existence of an agreement to arbitrate—in which event the court may order arbitration—or deny the existence of an agreement—in which event "a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement." *Avedon,* 126 F.3d at 1283.

In its Motion to Dismiss, Uber avoids taking a position on whether it made an agreement to arbitrate. Uber's failure to admit or deny the existence of an agreement to arbitrate is improper and is delaying the "summary and speedy disposition" of Plaintiff's request for an order compelling Uber to proceed with arbitration. *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 29.

## STANDARD FOR DECIDING A MOTION UNDER RULE 12(b)(6)

"When deciding whether a complaint states a claim that can survive a Rule 12(b)(6) motion, 'we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Wittner v. Banner Health,* 720 F.3d 770, 774 (10th Cir. 2013) (quoting *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009)). The compliant must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## ARGUMENT

I.  **PLAINTIFF'S COMPLAINT ADEQUATELY ALLEGES THAT SHE AND UBER AGREED TO ARBITRATION OF CLAIMS ARISING FROM HER USE OF UBER'S SERVICES.**

    A.  **Uber's argument that Plaintiff must "introduce . . . affirmative evidence" is frivolous.**

For its "first" argument, Uber contends that the Court should dismiss her claim for relief under 9 U.S.C. § 4 on the basis that "Plaintiff has failed to introduce any affirmative evidence that she *ever* entered into a contract with Uber – and at this stage of the proceedings, Uber is not certain she did." Motion to Dismiss at 6 (emphasis in original). That argument is frivolous. A plaintiff is not required to "introduce . . . affirmative evidence" as part of a complaint requesting relief under 9 U.S.C. § 4, nor is a plaintiff ever required to present evidence to survive a Rule 12(b)(6) motion.

    B.  **Plaintiff's Complaint alleges facts showing that she is entitled to an order compelling Uber to arbitrate under 9 U.S.C. § 4.**

Plaintiff's Complaint shows that she is entitled to an order compelling arbitration under to 9 U.S.C. § 4. Plaintiff alleges that "Uber requires consumers who use its services to agree to certain written 'Terms and Conditions.'" Complaint [Doc. #1] ¶ 6. Both at the time of the sexual assault and at the time Plaintiff demanded arbitration, Uber's Terms and Conditions provided in relevant part as follows:

> These Terms of Use govern the access or use by you, an individual, within the United States and its territories and possessions of applications, websites, content, products, and services (the "Services") made available in the United States and its territories and possessions by Uber USA, LLC and its subsidiaries and affiliates (collectively "Uber"). . . .
> Your access to and use of the Services constitutes your agreement to be bound by these Terms, which establishes a contractual relationship between you and Uber.

*Id.* ¶ 7. *See also* Compliant Exh. 1 & Exh. 2.

Plaintiff alleges that, at all times relevant, Uber's Terms and Conditions contained a mandatory arbitration clause. Complaint ¶ 9. That clause provides in part as follows:

**ARBITRATION.**

You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, 'Disputes') will be settled by binding arbitration between you and Uber . . . .

**ARBITRATION RULES AND GOVERNING LAW.**

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this "Dispute Resolution Section." . . . The Federal Arbitration Act will govern the interpretation and enforcement of this Section.

Complaint ¶ 10. *See also* Complaint Exh. 1 § 6; Complaint Exh. 2 § 6.

Plaintiff alleges, "Before November 1, 2015, Plaintiff had downloaded and used the Uber 'App.' In so doing, she and Uber entered into an agreement that any dispute concerning her use of Uber's services would be subject to Uber's 'Terms and Conditions,' including the mandatory arbitration clause." Complaint ¶ 12. Plaintiff alleges injuries as a result of using Uber's services. "On October 31 and November 1, 2015, Plaintiff and her friend used Uber's transportation service to be transported within the City and County of Denver. While using Uber's services, Plaintiff suffered injuries, damages, and losses, for which she seeks compensation from Uber." Complaint ¶ 13.

Plaintiff alleges that she demanded arbitration of claims against Uber. She filed a demand for arbitration with AAA on October 28, 2016. Complaint ¶ 15. *See also id.* Exh. 4. On November 10, 2016, however, AAA informed Plaintiff that it had to "decline to administer *this claim and any other claims between Uber USA, LLC and its consumers.*"

Complaint ¶ 16 (emphasis added). AAA explained that Uber had failed to pay AAA's filing fees, had failed to waive provisions in its Terms and Conditions that violated the AAA's Consumer Due Process Protocol, and failed to comply with AAA's requirement that it register its arbitration clause. *Id. See also* Complaint Exh. 5.

Uber attaches a copy of Plaintiff's demand for arbitration as Exhibit A to its Motion to Dismiss. The Court can see for itself that Plaintiff's claims against Uber arise from her use of Uber's services.

Finally, Plaintiff alleges other facts showing that this Court has jurisdiction and the power to compel Uber to arbitrate Plaintiff's claims. *See* Complaint ¶¶ 3-5, 18. There can be no serious dispute that Plaintiff has alleged facts showing a plausible entitlement to an order compelling Uber to proceed to arbitration.

**C.    Uber's argument that it is relieved of its obligation to arbitrate Plaintiff's claims based on its contention that the assault occurred "off app" is both unsupported by evidence and contrary to law.**

The Court should reject Uber's argument that Plaintiff's claims are not subject to arbitration based on its allegation that its employee driver sexually assaulted Plaintiff "off app." As a threshold matter, Uber offers no evidence showing that its driver went "off app" before sexually assaulting Plaintiff. Uber has records that would show whether its employee driver went "off app" or stayed "on app." If Uber wants to establish that the assault occurred "off app," it will need to present evidence.

Second, nothing in the text of Uber's Terms and Conditions makes the arbitrability of consumers' claims dependent on whether its employee driver or a passenger is "on app" at the time injury occurs. To the contrary, the Terms and Conditions state that "any dispute, claim or controversy arising out of or relating to . . .

use of [Uber's] Services . . . will be settled by binding arbitration between you and Uber . . . ." Complaint ¶ 10. Plaintiff's demand for arbitration plainly alleges claims arising out of her use of Uber's services. *See* Motion Exh. A.

Third, the allegations in Plaintiff's demand for arbitration show why it makes no difference whether Uber's employee driver went "off app" before committing the sexual assault. Plaintiff alleges that "Uber advertises itself as the safest and best option for transportation" and that it "advertises to young women who have been drinking, claiming that rider safety is its top priority." Motion to Dismiss, Exh. A at 3-4. Despite that advertising, there is no basis for Uber's claims that it is a safe transportation option, and Uber knows that it has a problem with its drivers sexually assaulting passengers. *Id.*

On October 31, 2015, Plaintiff's friend used Uber's app to order transportation to a nightclub in Denver. *Id.* at 7. Uber's employee driver told Plaintiff and her friend to contact him when they were ready to return to their hotel. *Id.* at 8. Plaintiff's friend summoned Uber's employee driver for the return ride, and he sexually assaulted Plaintiff *en route. Id.*

In the factually similar case of *Jane Doe 1 et al. v. Uber Technologies, Inc.,* United States District Judge Susan Illston of the Northern District of California rejected Uber's argument that it could not be liable for its employee's sexual assault of a female passenger on the basis that it occurred "off app."

> Uber singles out the allegations against driver Aiello in particular, arguing that plaintiffs have failed to allege that Aiello was using the Uber App at the time that he assaulted Doe 2 and therefore he can't have been acting within the scope of employment. The Amended Complaint states that Doe 2's friend used the Uber App to arrange the initial pick-up from Aiello to a bar but is silent as to whether the App was used to summon Aiello at the end of the night. The Amended Complaint alleges that someone in the group asked Aiello at the end of the initial car ride whether

8

> he would agree to pick them up later. Plaintiffs also allege that Doe 2 got back into Aiello's car at the end of the night, after he dropped off her friend, "still believing that Aiello was acting in his capacity as an Uber driver . . . ."
>
> . . . A finder of fact could determine that Aiello was acting within the scope of his employment where he was summoned using the Uber App, even if rides were offered and received later that night without the use of the App. Taking the allegations in the light most favorable to plaintiffs, as is required at this stage of the case, it is plausible that the rides Doe 2 took at the end of the night came about only because of Aiello's affiliation with Uber.

*Doe v. Uber Techs., Inc.,* 184 F.Supp.3d 774, 785 (N.D. Cal. 2016). Judge Illston's analysis applies with as much force—if not even greater force—to this case. Whether or not the return trip was "on app" or "off app" is not dispositive of Plaintiff's claims against Uber, much less of Plaintiff's right to compel Uber to submit those claims to arbitration.

Uber's argument that the sexual assault occurred "off app" is, if anything, a defense to liability to be decided in arbitration. That argument has no bearing on whether Plaintiff's claims are subject to arbitration. Uber disregards established law by presenting its "off app" defense in its Motion to Dismiss. *See, e.g., Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25. ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

## II.     Plaintiff states a claim under the Consumers Legal Remedies Act.

As alleged in Plaintiff's Complaint, Uber's Terms and Conditions state that they are "governed by and construed in accordance with the laws of the State of California, U.S.A., without giving effect to any conflict of law principles." Complaint ¶ 27. The California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., allows a

consumer to sue for injunctive relief when a business engages in unfair and deceptive acts and practices in the sale of goods and services.

> Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following:
>
> . . .
>
> (2) An order enjoining the methods, acts, or practices.

Cal. Civ. Code § 1780(a)(2).

Plaintiff's Complaint seeks injunctive relief under the CLRA. Complaint ¶ 34. Although the CLRA allows claims for "actual damages," Cal. Civ. Code § 1780(a)(1), the Complaint does not request an award of money damages for violation of the CLRA.

The Court should reject Uber's argument that Plaintiff fails to state a claim under the CLRA on the basis that she has not pled "actual damages." That argument is contrary to California Supreme Court precedent and has no merit.

In *Kagan v. Gibralter Sav. & Loan Assn.*, 676 P.3d 1060 (Cal. 1984), the California Supreme Court firmly rejected the argument (which Uber now advances) that a plaintiff must allege economic damages to state a claim for relief under the CLRA.

> We thus reject Gibraltar's effort to equate pecuniary loss with the standing requirement that a consumer "suffer[] any damage." As it is unlawful to engage in any of the deceptive business practices enumerated in section 1770, consumers have a corresponding legal right not to be subjected thereto. Accordingly, we interpret broadly the requirement of section 1780 that a consumer "suffer[] any damage" to include the infringement of any legal right as defined by section 1770.

*Kagan,* 676 P.3d at 1065.

The California Supreme Court reiterated that a claim under the CLRA does *not* require pecuniary damages in *Meyer v. Sprint Spectrum L.P.,* 200 P.3d 295 (2009).

> [P]laintiffs contend that the phrase "any damage" is not synonymous with "actual damages," which generally refers to pecuniary damages. The language of section 1780(a) dictates that plaintiffs are correct. If "any damage" and "actual damages" were synonymous, then it seems likely only the latter phrase would have been used in the first part of subdivision (a). The juxtaposition of the two phrases so close together indicates that the phrases have different meanings. Moreover, the breadth of the phrase "any damage" indicates a category that includes, but is greater than, "actual damages," i.e., those who are eligible for the remedy of "actual damages" are a subset of those who have suffered "any damage."

*Meyer,* 200 P.3d 299. The *Meyer* court observed that, when a plaintiff must engage counsel or take other efforts to address a defendant's violation of the CLRA, "the expenditure of such transaction costs to avoid the consequences of a deceptive practice falls within the broad meaning of suffering 'any damage as a result of the use or employment' of an unlawful practice, whether or not those transaction costs are cognizable as 'actual damages.'" *Id.* at 300.

*Meyer* holds that purely "preemptive lawsuits" fall outside the CLRA, whereas cases involving an actual dispute are within the CLRA. The plaintiff in *Meyer* alleged that the defendant's arbitration clause violated the CLRA because it was unconscionable; however, plaintiff had no claims against the defendant such that the enforceability of the arbitration clause was ripe for determination. *Meyer,* 200 P.3d at 298. The California Supreme Court stated the following:

> Plaintiffs do not allege that there was any dispute between them and Sprint that necessitated resort to arbitration or to the other remedial provisions. Rather, theirs can be characterized as a preemptive lawsuit to strike these terms should any dispute arise. The question is whether the CLRA gives standing to permit such preemptive suits.

*Id.*

> Although the allegedly unconscionable terms may at some future point require plaintiffs to experience greater costs and legal fees should a dispute arise that requires arbitration or resort to other remedial

11

>provisions, it would contort the statutory language to conclude that the preemptive expenditure of fees for this litigation means that Spring's alleged unlawful practices had caused "damage" at the time the lawsuit was filed. . . . We decline to extend *Kagan* to situations in which an allegedly unlawful practice under the CLRA has not resulted in some kind of tangible increased cost or burden to the consumer.

*Id.* at 301.

This case is not a "preemptive lawsuit." Uber's employee driver sexually assaulted Plaintiff. Plaintiff demanded arbitration of her claims against Uber, and AAA responded by informing Plaintiff that it refused to administer *any* consumer arbitration against Uber due to prior noncompliance with AAA's rules. Plaintiff desired arbitration as a convenient, efficient, and private forum to resolve her claims against Uber. Complaint ¶ 33. She has suffered distress as a result of the delay in the resolution of her claims against Uber and her concerns about the loss of her privacy by having to file this case in federal court. *Id.* Even before filing this lawsuit, Plaintiff took steps to address Uber's violation of the CLRA, including notifying Uber that it was in default of its agreement to arbitrate. Complaint ¶ 18. The Court may take judicial notice of the fact that Plaintiff has spent time and money to file this lawsuit to remedy Uber's failure to arbitrate in accordance with its representations to consumers.

Plaintiff has met the requirement that she show "any damage[]" under the CLRA. Uber's argument that the CLRA requires "economic injury" is untenable under established California law. Uber's reliance on *Bower v. AT&T Mobility, LLC,* 127 Cal. Rptr. 3d 569, 577 (Cal. App. 2011), is misplaced because that case addressed standing to bring a claim under Cal. Civ. Code § 17200, which is a different statute from the CLRA. Defendants' reliance on *Chulick-Perez v. CarMax Auto Superstores Cal., LLC,* 71 F.Supp.3d 1145, 1149-50 (E.D. Ca. 2014), is similarly misplaced because the

plaintiff in that case had suffered no injury at all, meaning that case was the kind of "preemptive lawsuit" discussed in the *Meyer* opinion.

**III.    Plaintiff states a claim under the Colorado Consumer Protection Act.**

The Court likewise should reject Uber's motion to dismiss Plaintiff's claim under the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101, et seq. Uber's argument that Plaintiff has not alleged injury in fact to a legally protected interest, Motion to Dismiss at 10, is without substance.

Uber's main argument is that "Plaintiff's alleged injuries and causation theories presuppose the right to arbitrate her assault-related claim." Motion to Dismiss at 19. Plaintiff agrees that, if she has no right to arbitration, then her claims under the CLRA and CCPA fail. But by the same token, if she has a right to arbitration, then she has alleged injury in fact to a legally protected interest under the CLRA and CCPA. Plaintiff's Compliant adequately alleges a right to arbitration of her claims against Uber.

The Court also should reject Uber's argument that Plaintiff's CCPA claim fails due to a lack of significant public impact. The Court must consider (1) the number of consumers affected by Uber's representation that it will resolve disputes through arbitration with AAA, (2) the relative sophistication and bargaining power of the consumers, and (3) evidence that the practice has impacted other consumers or has a significant potential to do so in the future. *Martinez v. Lewis,* 969 P.2d 212, 222 (Colo. 1998). Plaintiff alleges facts addressing each of these points.

Plaintiff alleges that Uber's transportation service is "used by millions of consumers across the United States, including Colorado." Complaint ¶ 1. Uber falsely represents to each and every one of these millions of consumers that any disputes or

13

claims related to or arising out of its services will be resolved by arbitration administered by AAA. *Id.* ¶¶ 6-11. As demonstrated by Paragraphs 6-11 of the Complaint and Exhibits 1 and 2 to the Complaint, Uber's Terms and Conditions are non-negotiable. What Uber's millions of consumers do not know—but Uber does know—is that AAA has informed Uber that "it may decline to administer arbitrations involving [Uber] and requested that [Uber] remove the AAA from its consumer arbitration agreements <u>*so that there would be no confusion to the public*</u>." *Id.* ¶ 16 (emphasis added). Uber refused to comply with AAA's requests. *Id.* ¶ 39. AAA informed Plaintiff that it could not administer *any* consumer's arbitration against Uber. *Id.* ¶ 16. Consumers like Plaintiff only discover the hard way—by spending their time and money to demand arbitration—that Uber has not complied with AAA rules and the AAA will not arbitrate disputes.

The question for the Court is whether this case presents a so-called "private wrong" between Plaintiff and Uber or whether the facts present a broader consumer protection problem. Although Plaintiff's (sadly not unique) claims for sexual assault may be the reason she demanded arbitration, and while other Uber consumers may have their own reasons for demanding arbitration, Uber's failure to honor its representations regarding arbitration of consumer disputes clearly concerns all of the many millions of consumers who are actual or prospective user of Uber's services.

Finally, Plaintiff disagrees with Uber's contention that she has somehow "passed on the opportunity to arbitrate her claims." Motion to Dismiss at 10. The Complaint alleges that Plaintiff attempted to arbitrate her claims against Uber, gave Uber notice and an opportunity to cure its default, and then filed this lawsuit. Plaintiff acknowledges that, *after* filing this lawsuit, Uber discussed arbitration of her claims. As of yet, however,

Uber has not committed to the details of how arbitration would proceed. The Court can see that Uber is taking inconsistent positions insofar as filing its Motion to Dismiss is an unconvincing way to demonstrate a willingness to arbitrate Plaintiff's claims.

Dated: March 14, 2017

*/s/ Ross W. Pulkrabek*
Ross W. Pulkrabek, # 31111
Keating Wagner Polidori Free, P.C.
1290 Broadway, Suite 600
Denver, CO 80203
Phone: 303.534.0401
rpulkrabek@keatingwagner.com

Gregory A. Gold, #26064
Pamela B. Maass, #42408
The Gold Law Firm
7375 E. Orchard Road Suite 300
Greenwood Village, CO 80111
Telephone: (303) 694-4653
Facsimile: (303) 468-6155
Greg@TheGoldLawFIrm.net
Pam@TheGoldLawFIrm.net

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the clerk of the United States District Court using the CM/ECF system which will sent notification to all counsel referenced below, this 14th day of March, 2017.

Heather M. Gwinn Pabon
Gordon & Rees, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202

                                              *s/ Tammy Harris*
                                              Tammy Harris